UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACOB J. BECKEL,

    Plaintiff,

v.                                          CASE NO.: _____

FAGRON HOLDING USA, LLC, JACOB G.
JACKSON, FAGRON NV, GER VAN JEVEREN,
and JAN PEETERS,

    Defendants.
_____/

## COMPLAINT

Plaintiff Jacob J. Beckel ("Beckel") sues Fagron Holding USA, LLC ("Fagron"), Jacob G. Jackson ("Jackson"), Fagron NV, Ger van Jeveren ("van Jeveren"), and Jan Peeters ("Peeters") (together, "Defendants"), and alleges:

### Introduction

1.    This is an action for damages with a value in excess of $75,000, exclusive of interest, costs, and fees.

2.    Beckel is a resident of Florida who resides in Pinellas County, Florida.

3.    Fagron is a Delaware limited liability company with its principal place of business in St. Paul, Minnesota, and Fagron is authorized to conduct business in the State of Florida.

4.    Jackson is a resident of Florida. At all material times, Jackson was the President of Fagron. At all material times, Jackson had actual and apparent authority to bind Fagron with his actions, representations, and omissions described below.

5.    Fagron NV is a Belgian corporation with its principal place of business in Brussels, Belgium. Pursuant to Section 48.193(1)(a)(2), *Florida Statutes,* Fagron NV is subject to personal

jurisdiction in Florida because this action arises from its agents committing tortious acts in Florida, as alleged below.

6. van Jeveren is a resident of Rotterdam, a city in the Netherlands. At all material times, van Jeveren was the Chief Executive Officer of Fagron NV, which is Fagron's parent company. At all material times, van Jeveren had actual and apparent authority to bind Fagron and Fagron NV with his actions, representations, and omissions described below. Pursuant to Section 48.193(1)(a)(2), *Florida Statutes,* van Jeveren is subject to personal jurisdiction in Florida because this action arises from van Jeveren committing tortious acts in Florida, as alleged below.

7. Peeters is a resident of Rotterdam, a city in the Netherlands. At all material times, Peeters was the Chief Financial Officer of Fagron NV, which is Fagron's parent company. At all material times, Peeters had actual and apparent authority to bind Fagron and Fagron NV with his actions, representations, and omissions described below. Pursuant to Section 48.193(1)(a)(2), *Florida Statutes,* Peeters is subject to personal jurisdiction in Florida because this action arises from Peeters committing tortious acts in Florida, as alleged below.

8. This Court has subject matter jurisdiction over the federal claims alleged in this Complaint pursuant to 28 U.S.C. § 1331, and supplemental subject matter jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

### General Allegations

9. According to its website, Fagron is "an R&D [research and development] scientific pharmaceutical compounding supplier." *See* https://us.fagron.com/en-us/company.

10. According to its website, Fagron NV is "dedicated to optimizing and innovating customized pharmaceutical care in order to widen the therapeutic options of prescribers worldwide." *See* https://www.fagron.com/en/world/fagron-divisions.

11. In February of 2015, Beckel met representatives of Fagron at the International Academy of Compounding Pharmacists trade show held in Ft. Lauderdale, Florida, including Jackson and Rob Perkins, who served as the Vice President of Pharmacy Affairs for Fagron.

12. At that time, Beckel served as Chief Executive Officer of AnazaoHealth Corporation ("AnazaoHealth"), which owned 100% of the ownership interests of Coast Quality Pharmacy, LLC ("Coast"), a pharmaceutical company, and Ducere LLC ("Ducere"), a marketing company.

13. While at the trade show, Jackson asked Beckel to sell AnazaoHealth Corporation to Fagron.

14. In furtherance of the discussions that began at the trade show, in March of 2015, Jackson, van Jeveren, and Peeters visited AnazaoHealth in Tampa, Florida, to explain the "Fagron Story." During that meeting, Beckel agreed in principle to sell AnazaoHealth to Fagron with the understanding that representatives of AnazaoHealth (including Beckel) would tour Fagron NV's facilities in Rotterdam, a city in the Netherlands.

15. On or around April 15 and April 16, 2015, Chris Arnette, President and Chief Operating Officer of AnazaoHealth ("Arnette"), Beckel, and Doug Berkoff, Chief Financial Officer of AnazaoHealth ("Berkoff"), visited Fagron NV's facilities in Rotterdam and a number of Fagron facilities in Belgium.

16. Subsequently, on April 28, 29, and 30, 2015, and Arnette, Beckel, and Berkoff, along with AnazaoHealth's corporate counsel, Natasha Nesbitt, met with van Jeveren, Peeters, and Jackson, at Fagron's headquarters in Miami, Florida, to discuss and negotiate Fagron's purchase of AnazaoHealth.

17. As part of these negotiations, Beckel inquired on April 28, 2015, the first day of the negotiations, as to the portion of Fagron's business that included the sale of compound pain creams ("Compound Pain Creams"). Fagron sold Compound Pain Creams through its wholly owned subsidiary, Bellevue Pharmacy ("Bellevue").

18. Due to discussions in the pharmaceutical market and his own personal experience in the industry, Beckel had developed an understanding that certain pharmacies who supply Compound Pain Creams routinely billed TRICARE[1] for these compounds at an inordinate upcharge and that TRICARE was likely to reduce or eliminate reimbursements due to overcharges. Beckel sought assurances from Defendants that Fagron did not engage in such practices.

19. On April 28, 2015, during a meeting among Jackson, van Jeveren, Peeters, Beckel, Arnette, and Berkoff, Jackson specifically represented to Beckel, in response to Beckel's inquiry, that Fagron charged $200 to $300 for Compound Pain Creams, rather than excessive prices in the thousands of dollars. van Jeveren specifically and emphatically represented that there was no issue with the manner in which Fagron billed TRICARE for Compound Pain Creams. Peeters sat silent in response to Beckel's inquiry.

20. At the time Jackson and van Jeveren made the representations to Beckel, Jackson, van Jeveren, and Peeters knew the representations were false because, in fact, Fagron charged TRICARE approximately $3,000 to $5,000 per Compound Pain Cream.

21. At the time Beckel inquired about Fagron's pricing practices for Compound Pain Creams, Jackson, van Jeveren, and Peeters concealed the fact that Fagron charged TRICARE approximately $3,000 to $5,000 per Compound Pain Cream.

---

[1] TRICARE is a health care program for uniformed service members and their families around the world. It is managed by the Defense Health Agency under the leadership of the Assistant Secretary of Defense (Health Affairs). *See* http://www.tricare.mil/About.

22. Jackson also concealed the fact that he and Jake Wilson, the President and Chief Executive Officer of Bellevue, owned and controlled an entity known as United Compounding Management, which was a direct competitor of AnazaoHealth. On information and belief, van Jeveren and Peeters were also aware of and concealed this fact.

23. Based on these representations and omissions, and after three days of negotiating between representatives of AnazaoHealth (including Beckel) and agents of Fagron and Fagron NV, Beckel and other shareholders of AnazaoHealth (the "Sellers") agreed to sell and Fagron agreed to purchase AnazaoHealth at a purchase price of $50,000,000.00.

24. That purchase price was composed of the following components:

    a. $30,000,000.00 in cash at closing;

    b. $10,000,000.00 in Fagron NV stock at closing (the "Purchase Price Shares"); and

    c. $10,000,000.00 in Fagron NV stock as an earnout payment if AnazaoHealth met certain financial performance criteria following the sale (the "Earnout Shares").

25. On April 30, 2015, Beckel, along with the other shareholders of AnazaoHealth, as Sellers, and Fagron, as Purchaser, executed a written Stock Purchase Agreement (the "SPA") memorializing the agreed terms, which was later amended to identify Fagron NV as a third party beneficiary.

26. Following the execution of the SPA, Fagron paid Beckel and the other Sellers $30,000,000.00 in cash. Fagron later transferred some of the Purchase Price Shares to the Escrow Agent.

27. Subsequently, Fagron notified Beckel and the other Sellers that AnazaoHealth's financial performance exceeded the $10,000,000.00 stock earn out requirements, such that Fagron should have transferred the Earnout Shares to the Escrow Agent.

28. In or around July 2015, TRICARE announced that it would no longer provide reimbursements to Fagron for Compound Pain Creams.

29. Following the TRICARE announcement, the price of Fagron NV's stock plummeted.

30. Fagron is bound by and liable for its agents' misrepresentations and omissions.

31. Fagron NV is bound by and liable for its agents' misrepresentations and omissions.

32. Beckel relied on Defendants' misrepresentations and omissions when he agreed to sell AnazaoHealth to Fagron in exchange for, in part, stock of Fagron NV.

33. As a result of his reliance on Defendants' misrepresentations and omissions, Beckel agreed to a purchase price that included $20,000,000.00 in Fagron NV stock that has substantially diminished in value since the SPA and purchase price were negotiated.

34. If Beckel had known the truth about Fagron's billing practices regarding the Compound Pain Creams, Beckel would not have agreed to sell AnazaoHealth pursuant to the terms included in the SPA.

## Count I – Fraud in the Inducement

35. Beckel realleges paragraphs 1–34.

36. As set forth above, Defendants knowingly misrepresented and made material omissions suggesting that Fagron did not bill TRICARE for the Compound Pain Creams at an excessive and fraudulent upcharge.

37. Defendants intended to induce Beckel to execute the SPA and otherwise engage in this transaction.

38. Beckel justifiably relied on Defendants' representations and omissions.

39. Due to Beckel's reliance on Defendants' representations and omissions, Beckel has suffered damages.

WHEREFORE, Beckel demands judgment against Defendants, jointly and severally, for damages, interest, costs, and whatever other relief the Court deems appropriate.

### Count II – Negligent Misrepresentation

40. Beckel realleges paragraphs 1–34.

41. As set forth above, Defendants misrepresented and made material omissions suggesting that Fagron did not bill TRICARE for the Compound Pain Creams at an excessive and fraudulent upcharge.

42. Defendants were negligent in making these misrepresentations and omissions.

43. Defendants intended to induce Beckel to execute the SPA and otherwise engage in this transaction.

44. Beckel justifiably relied on Defendants' representations and omissions.

45. Due to Beckel's reliance on Defendants' representations and omissions, Beckel has suffered damages.

WHEREFORE, Beckel demands judgment against Defendants, jointly and severally, for damages, interest, costs, and whatever other relief the Court deems appropriate.

### Count III – Violation of Section 10(b) of the 1934 Securities and Exchange Act and Rule 10b-5

46. Beckel realleges paragraphs 1-34.

47. This is a claim for damages against Defendants for violation of Section 10(b) of the 1934 Securities and Exchange Act (the "Act") and Rule 10b-5, codified at 17 C.F.R. section 240.10b-5.

48. Defendants are liable for making false statements and failing to disclose adverse facts known about Fagron's billing practices in connection with the purchase of securities in AnazaoHealth from Beckel. Defendants' fraudulent scheme operated as a fraud or deceit on Beckel, as Defendants: (a) deceived Beckel as to Fagron's business, assets, and finances; (b) deceived Beckel regarding Fagron's billing practices; and (c) caused Beckel to sell AnazaoHealth in exchange for, in part, securities in Fagron NV, and suffer economic losses and damages as a result.

49. Defendants disseminated or approved the false statements and omissions specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Defendants knew or recklessly disregarded the adverse facts specified and failed to disclose these facts.

50. Defendants initiated and pursued a scheme and course of conduct which was designed to and did induce Beckel to agree to sell AnazaoHealth in exchange for securities in Fagron (in part) in reliance on the false representations and omissions.

51. Defendants acted with scienter in that they knew that statements issued or disseminated in the name of Fagron were materially false and misleading; knew that such statements would be issued or disseminated to Beckel; knew that the true facts were not disclosed; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or omissions as primary violations of the federal securities laws.

52. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they:

    a. employed devices, schemes, or artifices to defraud;

b. made untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Beckel.

53. Beckel would not have agreed to sell AnazaoHealth in exchange for, in part, securities in Fagron NV, or at all, if he had been aware of the lack of truthfulness in Defendants' misleading statements and failure to disclose material facts.

54. As a direct and proximate result of Defendants' wrongful conduct, Beckel suffered damages in connection with the sale of AnazaoHealth in exchange for securities in Fagron NV (in part).

WHEREFORE, Beckel demands judgment against Defendants, jointly and severally, for damages, interest, costs, and whatever other relief the Court deems appropriate.

### Count IV – Violation of Section 517.301, Florida Statutes

55. Beckel realleges paragraphs 1–34 as if stated fully herein.

56. This is a claim for damages against Defendants for violation of Section 517.301, Florida Statutes.

57. Defendants are liable for making false statements and failing to disclose adverse facts known to it about its billing practices in connection with the purchase of securities in AnazaoHealth from Beckel. Defendants' fraudulent scheme operated as a fraud or deceit on Beckel, as Defendants: (a) deceived Beckel as to Fagron's business, assets, and finances; (b) deceived Beckel regarding Fagron's billing practices; and (c) caused Beckel to sell AnazaoHealth

in exchange for, in part, securities in Fagron NV, and suffer economic losses and damages as a result.

58. Defendants disseminated or approved the false statements and omissions specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Defendants knew or recklessly disregarded the adverse facts specified and failed to disclose these facts.

59. Defendants initiated and pursued a scheme and course of conduct which was designed to and did induce Beckel to agree to sell AnazaoHealth in exchange for securities in Fagron NV (in part) in reliance on the false representations.

60. Defendants acted with scienter in that they knew that statements issued or disseminated in the name of Fagron were materially false and misleading; knew that such statements would be issued or disseminated to Beckel; knew that the true facts were not disclosed; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or omissions as primary violations of Florida securities laws.

61. Defendants violated Section 517.301, Florida Statutes, in that they:

   a. employed devices, schemes, or artifices to defraud;

   b. obtained money or property by means of untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

   c. engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Beckel.

62. Beckel would not have agreed to sell AnazaoHealth in exchange for, in part, securities in Fagron NV, or at all, if he had been aware of the lack of truthfulness in Defendants' misleading statements and failure to disclose material facts.

63. As a direct and proximate result of Defendants' wrongful conduct, Beckel suffered damages in connection with the sale of AnazaoHealth in exchange for securities in Fagron NV (in part).

WHEREFORE Beckel demands judgment against Defendants for damages, statutory attorney fees pursuant to Section 517.211(6), interest, costs, and whatever other relief as this Court deems appropriate.

Dated: July 18, 2016

*/s/ Bradford D. Kimbro*
Bradford D. Kimbro
Florida Bar No. 908002
Joseph H. Varner, III
Florida Bar No. 394904
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Ph. (813) 227-8500
Fax (813) 229-0134
brad.kimbro@hklaw.com
joe.varner@hklaw.com
Secondary email:
beverly.long@hklaw.com
gloria.mcknight@hklaw.com

*Attorneys for Plaintiff*