# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JACOB J. BECKEL,

    Plaintiff,

v.                              Case No. 8:16-cv-2059-T-23AAS

FAGRON HOLDING USA, LLC,
JACOB G. JACKSON, FAGRON
NV, GER VAN JEVEREN, and JAN
PEETERS,

    Defendants.
_____/

## ORDER

Jacob J. Beckel ("Beckel") moves for an order directing Jacob G. Jackson ("Jackson") to produce documents and provide better interrogatory responses. (Doc. 85). Jackson moves for a protective order prohibiting discovery related to an FBI investigation. (Doc. 107). Fagron Holding USA, LLC ("Fagron USA"), Fagron NV, Ger van Jeveren ("van Jeveren"), and Jan Peeters ("Peeters") (collectively, "Fagron Defendants") join in Jackson's motion. (Doc. 108).

## I. BACKGROUND

Beckel sues Jackson and the Fagron Defendants for alleged misrepresentations and omissions made in connection with the execution of a Share Purchase Agreement for the sale of Beckel's company, AnazaoHealth Corporation. (Doc. 93). On April 28, 2015, Beckel met with van Jeveren, Peeters, and Jackson at Fagron USA's headquarters to negotiate Fagron USA's purchase of AnazaoHealth

1

Corporation. (*Id.* at ¶ 16). As part of these negotiations, Beckel asked about Fagron USA's pricing model for compound pain creams. (*Id.* at ¶ 18). In response, van Jeveren, Peeters, and Jackson informed Beckel (by misrepresentation and omission) that the pricing was appropriate. (*Id.* at ¶ 19). Beckel alleges Jackson, van Jeveren, and Peeters knew the representation was false because Fagron USA fraudulently charged TRICARE[1] thousands of dollars for compound pain creams, in a scam known as a reimbursement scheme.[2] (*Id.* at ¶ 21). Jackson also concealed that he and Jake Wilson, owned and controlled an entity known as United Compounding Management ("UCM"), which is allegedly a direct competitor of AnazaoHealth Corporation. (*Id.* at ¶ 22). Relying on these alleged misrepresentations and unaware of the omissions, Beckel executed the Shared Purchase Agreement. (*Id.* at ¶ 23).

Because of the late discovery of a 2015 contractual release executed by Jackson on behalf of Fagron USA and AnazaoHealth Corporation (the "2015 Release"), Jackson and the Fagron Defendants sought leave to amend their answers and

---

[1] TRICARE is a health care program for uniformed service members and their families. Defense Health Agency manages TRICARE under the leadership of the Assistant Secretary of Defense (Health Affairs). *See* http://www.tricare.mil/About.

[2] In January 2012, billing rules for compounded drugs changed so pharmacies could bill for each ingredient in a medication, rather than just for the most expensive ingredient. (Doc. 85-1, ¶ 2). Some pharmacies began creating compounded drugs with unnecessary ingredients to inflate billing and reimbursements. (*Id.*). Those pharmacies would then cap or waive high copayments to increase patient interest in the compounded drugs. (*Id.* at ¶ 3). The participating pharmacies would then send fraudulent claims to insurance companies showing that copayments were made in full to receive reimbursement. (*Id.*).

affirmative defenses. (Docs. 67, 70). The court permitted the amendments. (Docs. 68, 72).

Beckel also moved to amend his complaint to address the 2015 Release and to include additional allegations about material misrepresentations and omissions made by Jackson, including Jackson's failure to timely disclose an FBI investigation of a compound pain cream reimbursement scheme allegedly involving Jackson and his entities. (Doc. 73). The court granted Beckel's request as to the 2015 Release but denied the request to include further factual allegations supporting Jackson's alleged misrepresentations and omissions. Specifically, the court held:

> Because the defendants recently amended their answers (Docs. 69, 75) to include allegations about a release, the plaintiff's motion to amend and "seek affirmative relief from the release" is **GRANTED**.
>
> The plaintiff's request to amend to "provide additional facts" about the "material omissions and misrepresentations" resembles a request to amend to add corroborating or reinforcing allegations of fact, that is, to add "mere evidence" or, at least, to add information that the plaintiff expects will become evidence at the trial, none of which is a necessary or even a useful purpose for pleading. Adding an allegation of "material omissions and misrepresentations," that is, alleging an actionable event or adding a claim for relief is a useful purpose of pleading — but a purpose the plaintiff disavows in this instance. The plaintiff's motion to amend to allege "additional facts regarding the material omissions and misrepresentations alleged by [the plaintiff]" is **DENIED**.

(Doc. 82, p. 2) (emphasis in original).

Beckel requested Jackson produce documents and answers to interrogatories,

including discovery related to the FBI investigation. Jackson offered numerous objections to the discovery requests. Beckel then moved to compel adequate responses. (Doc. 85). In response, Jackson maintained his objections, and further argued the court's order "placed the governmental investigation issues outside the scope of this lawsuit." (Doc. 92).

Beckel requested clarification of the court's order granting leave to amend the complaint. (Doc. 94). The court granted Beckel's request for clarification providing:

> The defendants characterize the November 16 order as "circumscrib[ing] the scope of this case" and "expressly . . . limiting the claims [the plaintiff] will be entitled to prosecute at trial to those originally asserted in the Complaint." Based on that interpretation, the defendants object to the plaintiff's discovery requests. . 8
> **By enforcing the limited leave to amend that the October 27 order grants, the November 16 order creates no new limit on "the scope of this case" or the scope of discovery; the November 16 order is directed to a few particular items in the amended complaint but not to the scope of discovery.**

(Doc. 104, p. 2) (citations omitted) (emphasis added).

Jackson seeks a protective order as to discovery related to the FBI investigation. (Doc. 107). The Fagron Defendants join in Jackson's motion. (Doc. 108). Beckel opposes the motion. (Doc. 110).

The court will first address Jackson's motion for protective order prohibiting discovery related to the FBI investigation. (Doc. 107). Then, the court will address Beckel's motion to compel Jackson to produce documents and provide better interrogatory responses. (Doc. 85).

4

## II. ANALYSIS

### A. Jackson's Motion for Protective Order

The "Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). However, under Rule 26(c), any person from whom discovery is requested may move for a protective order. Fed. R. Civ. P. 26(c). For good cause, the court may enter a protective order to protect a party from embarrassment, oppression, or undue burden. *Id.* To establish good cause, the party requesting protection must demonstrate the need for a protective order, which requires "particular and specific demonstration of fact." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (citations omitted).

The FBI investigation includes an application for a warrant to seize property subject to forfeiture and an affidavit supporting the application, filed in the District of Colorado by FBI Agent Kevin Fiore ("Fiore affidavit"). (Doc. 85-1, Ex. A-1, pp. 62–101). The Fiore affidavit focuses on Brown's Compounding Center, and its owner, Darby Brown. The Fiore affidavit alleges Brown's Compounding Center and Mr. Brown submitted to insurance companies fraudulent claims showing copayments were made in full, when they had waived or capped those copayments. Jackson is extensively referenced in the Fiore affidavit as a principal of MedHealth Rx, which is allegedly a shell company for Freedom Pharmaceuticals, a bulk chemical supplier who allegedly profited by providing ingredients to compound pharmacies like Brown's

5

Compounding Center.

Jackson seeks an order protecting him from providing discovery related to the FBI investigation and the Fiore affidavit. (Doc. 107). Jackson asserts this information is outside the scope of Beckel's claims and the highly prejudicial nature of this discovery will cause Jackson annoyance, embarrassment, and oppression. (*Id.*). Fagron Defendants join in Jackson's motion and argue the production of discovery related to the FBI investigation and the Fiore affidavit will cause undue burden and expense because it may open the door to new testimony and claims. (Doc. 108).

As an initial matter, the court's order granting Beckel's request to amend the complaint does not limit discovery concerning the FBI investigation. The order "creates no new limit on 'the scope of this case' or the scope of discovery; the November 16 order is directed to a few particular items in the amended complaint but not to the scope of discovery." (Doc. 104, p. 2). Jackson's argument that the court's order prohibits discovery into the FBI investigation lacks merit.

Discovery related to the FBI investigation and the Fiore affidavit is relevant and proportional to the allegations that Jackson, his entities, or his business partners, were engaging in fraudulent billing practices at the time of the Shared Purchase Agreement. Jackson and the Fagron Defendants made no particularized showing of annoyance, embarrassment, oppression, or undue burden or expense, sufficient to establish good cause for a protective order. (Docs. 107, 108). Because

6

Jackson and the Fagron Defendants have not established good cause for entry of a protective order, the motion is denied.

B.     **Beckel's Motion to Compel**

District courts have broad discretion in handling discovery matters. *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013). "Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case .... Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

1.     **Jackson's Discovery Responses are Insufficient**

a.     **Boilerplate Objections**

Federal Rules of Civil Procedure 34(b)(2)(B) and 33(b)(1)(4) provide discovery responses must be stated with specificity. *See* Middle District Discovery (2015) at 12 ("Objections to requests for production should be specific, not generalized .... Boilerplate objections such as 'the request is overly broad, unduly burdensome, and outside the scope of permissible discovery' are insufficient without a full, fair explanation particular to the facts of the case.").

In response to Beckel's discovery requests, Jackson raises boilerplate objections including, harassing (Interrogatory Nos. 11–13, 16; Request for Production

7

Nos. 11–13, 16, 23–27, 29), vague (Interrogatory No. 12), overly broad and unduly burdensome (Request for Production No. 28), and improper "to the extent it asks for a pure legal conclusion" (Interrogatory Nos. 13, 16), without further explanation on why Beckel's discovery requests are improper. *See Miccosukee Tribe of Indians of Florida v. Cypress*, 2013 WL 10740706, at *1 (S.D. Fla. June 28, 2013) ("When a party responds to a discovery request with objections, it must do so in a [clear] and unambiguous manner, and must include a supporting explanation or justification for the objections."); *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 3841557, at *3 (M.D. Fla. Aug. 29, 2011) ("Defendant must state specific grounds for each objection."). The relevancy and proportionality objections, though wordier, are similarly inadequate. Reciting the interrogatory category of documents and repeatedly plugging in that those documents are "not relevant to the claims or defenses in this lawsuit" does not offer a full, fair explanation as to why the requested information or documents are not relevant and proportional.

Boilerplate or general objections constitute a waiver of the discovery sought. *See Spencer v. City of Orlando, Florida*, 2016 WL 397935, at *2 (M.D. Fla. Feb. 2, 2016) (concluding that objections that are "are too vague and nonspecific" fail to "preserve any objection to the requested discovery."). The same reasoning applies here, and Jackson has effectively waived any objections to the discovery requests at

8

issue.³ However, rather than grant Beckel's motion to compel on this basis alone, the court will address the discovery requests.

### b. Claims of Privilege and Work Product

Federal Rules of Civil Procedure 26 requires a party asserting privilege or any similar protection to (i) expressly make the claim, and (ii) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii); *see* Middle District Discovery (2015) at 20 ("A party who responds to or objects to discovery requests and who withholds information otherwise discoverable, asserting that the information is privileged or subject to other protection from discovery, must assert the claim expressly and must describe the nature of the documents, communications, or things not produced or disclosed, such that, without revealing the privileged or protected information itself, the description will enable other parties to assess the applicability of the privilege or protection.").

Jackson asserts claims of privilege and work product in response to Interrogatory Nos. 12–13, and 16, and Request for Production Nos. 11–13, 16, 23–26, and 28. However, according to Beckel, Jackson failed to produce a privilege log. *See*

---

³ The court will not rely on Jackson's post hoc clarification of his objections raised in his memorandum in opposition to Beckel's motion to compel. *See Moss v. GEICO Indem. Co.*, No. 5:10-cv-104-Oc-10TBS, 2012 WL 682450, at *3 (M.D. Fla. Mar. 2, 2012) (finding that the defendant waived its specific objection by raising it for the first time in its memorandum in opposition to the motion to compel).

*Pepperwood of Naples Condo. Ass'n, Inc.*, 2011 WL 3841557, at *8 (holding if the defendants claim privilege, he is obligated to provide the plaintiff with a with a privilege log); *Benfatto v. Wachovia Bank, N.A.*, 2008 WL 4938418, at *2 (S.D. Fla. Nov. 19, 2008) (finding that the defendants may not claim the plaintiff's discovery requests are privileged without providing a privilege log). Thus, Jackson must provide Beckel with a privilege log by **February 11, 2019**.

### 2. Jackson's Departure from Fagron USA

**Interrogatory No. 11**. State the reasons for and otherwise explain the circumstances surrounding your departure from Fagron USA, including without limitation who terminated your employment and why.

***Response***: Jackson objects to this Interrogatory as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. That Jackson is no longer employed by Fagron USA and the circumstances of his departure is not relevant to the claims or affirmative defenses asserted in this lawsuit. Jackson further objects to this Interrogatory as calculated primarily for the purposes of harassment. Consistent with these objections, no answer will be provided.

**Request for Production No. 11**. All documents regarding Jackson's answer to Interrogatory Number 11.

***Response***: Jackson objects to this Request to the extent it includes documents protected by the attorney-client and work-product privileges, including any documents exchanged between Jackson and attorneys and paraprofessionals who may have assisted the answering of these Interrogatories. Such documents will not be produced. Jackson further objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. That Jackson is no longer employed by Fagron USA and the

10

circumstances of his departure is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

**Request for Production No. 27**: All documents regarding your departure from Fagron USA.

*Response*: Jackson objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. That Jackson is no longer employed by Fagron USA and the circumstances of his departure is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

Beckel argues discovery concerning Jackson's departure from Fagron USA is relevant to determining the potential application of a liability insurance policy and what role, if any, the FBI investigation played in Jackson's departure from Fagron USA. (Doc. 85, pp. 8–9). In response, Jackson argues potential insurance coverage is not relevant to Beckel's claims, and the court placed the FBI investigation outside the scope of discovery. (Doc. 92, pp. 5–6).

As stated above, Jackson's argument that the order granting Beckel's motion to amend the complaint limits the scope of this discovery is without merit. (*See* Doc. 104, p. 2). The requested discovery is relevant and proportional to whether Jackson participated in a compound pain cream reimbursement scheme and what impact his

11

alleged participation in that scheme and the FBI investigation may have had on his employment at Fagron USA. Thus, Jackson's objections to Interrogatory No. 11, and Request for Production Nos. 11 and 27, are overruled.

### 3. United Compounding Management

**Interrogatory No. 12**. State the reasons for and otherwise explain the circumstances surrounding the creation of [UCM], including without limitation what role MedHealth Rx played, if any.

*Response*: Jackson objects to this Interrogatory as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. Although Plaintiff has alleged that [UCM] was a "competitor" of AnazaoHealth and that Jackson "concealed the fact that he and Jake Wilson . . . owned and controlled UCM," the "reasons for" and "circumstances surrounding the creation of [UCM]" is not relevant to the claims or affirmative defenses asserted in this lawsuit. Jackson further objects to this Interrogatory as calculated primarily for the purposes of harassment. Jackson further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Finally Jackson objects to the vague and uncertain nature of this Interrogatory due to the form of the question asking for information about the "circumstances surrounding" the creation of a corporate entity. Consistent with these objections, no answer will be provided.

**Interrogatory No. 13**. State the reasons for and otherwise explain the circumstances surrounding your representation during the December 11, 2014, Arseus conference call that [UCM] is an independent entity and you are not privy to the pricing or reimbursement model(s) for same (or words to that effect).

*Response*: Jackson objects to this Interrogatory as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. The alleged

statement by Jackson referenced in the Interrogatory is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Interrogatory as calculated primarily for the purposes of harassment. Jackson further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Jackson further objects to this Interrogatory to the extent it asks for a pure legal conclusion. Consistent with these objections, no answer will be provided.

**Request for Production No. 12**. All documents regarding Jackson's answer to Interrogatory Number 12.

*Response*: Jackson objects to this Request to the extent it includes documents protected by the attorney-client and work-product privileges, including any documents exchanged between Jackson and attorneys and paraprofessionals who may have assisted the answering of these Interrogatories. Such documents will not be produced. Jackson further objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. Although Plaintiff has alleged that [UCM] was a "competitor" of AnazaoHealth and that Jackson "concealed the fact that he and Jake Wilson . . . owned and controlled UCM," the "reasons for" and "circumstances surrounding the creation of [UCM]" is not relevant to the claims or affirmative defenses asserted in this lawsuit. Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in Response to this Request.

**Request for Production No. 13**: All documents regarding Jackson's answer to Interrogatory Number 13.

*Response*: Jackson objects to this Request to the extent it includes documents protected by the attorney-client and work-product privileges, including any documents exchanged between Jackson and attorneys and

> paraprofessionals who may have assisted the answering of Plaintiff's First Set of Interrogatories. Such documents will not be produced. Jackson further objects that this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. The alleged statement by Jackson referenced in the Interrogatory is not relevant to the claims or affirmative defenses asserted in this lawsuit-- including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

The complaint alleges: "Jackson also concealed the fact that he and Jake Wilson, the President and Chief Executive Officer of Bellevue, owned and controlled an entity known as [UCM], which was a direct competitor of AnazaoHealth." (Doc. 93, ¶ 22). In Jackson's response to the allegation he maintained an ownership interest in UCM, Jackson stated:

> Admitted in part and denied in part. Jackson admits that Jackson and Jake Wilson have ownership interests in an entity known as United Compounding Management. Jackson denies that UCM is a "direct competitor" of AnazaoHealth. Jackson admits that he did not mention his ownership interest in UCM to Beckel, but denies that he actively "concealed" or hid such information from Beckel, as Jackson had no reason, nor was under any obligation to, disclose such information. Except as expressly admitted, denied.

(Doc. 100, ¶ 22).

The requested discovery is relevant and proportional to the allegation that Jackson concealed his ownership in UCM and UCM was a direct competitor of AnazaoHealth. Thus, Jackson's objections to Interrogatory No. 12 and 13, and

14

Request for Production Nos. 12 and 13, are overruled.

### 4. FBI Investigation and Fiore Affidavit

**Interrogatory No. 16**. Identify when you first became aware that any Government Agency was investigating you (or any entity with which you have an affiliation) relating to the conduct and circumstances described in Special Agent Kevin Fiore's affidavit dated June 5, 2015.

*Response*: Jackson objects to this Interrogatory as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. The affidavit referenced in this Interrogatory and the existence of any investigation of Jackson by any Government Agency is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Jackson further objects to this Interrogatory to the extent it asks for a pure legal conclusion. Jackson further objects to this Interrogatory as calculated primarily for the purposes of harassment. Consistent with these objections, no answer will be provided.

**Request for Production No. 16**. All documents regarding Jackson's answer to Interrogatory Number 16.

*Response*: Jackson objects to this Request to the extent it includes documents protected by the attorney-client and work-product privileges, including any documents exchanged between Jackson and attorneys and paraprofessionals who may have assisted the answering of these Interrogatories. Such documents will not be produced. Jackson further objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. The affidavit referenced in the corresponding Interrogatory and the existence of any investigation of Jackson by any Government Agency is not relevant to the claims or affirmative defenses asserted in this lawsuit--including

any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

**Request for Production No. 23**. All documents regarding the formation of MedHealth Rx LLC.

*Response*: Jackson objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. The formation of MedHealth Rx LLC is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request to the extent it seeks documents and communications protected by the attorney-client privilege or work product doctrine. Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request

**Request for Production No. 24**. All documents regarding the formation of Freedom Pharmaceuticals.

*Response*: Jackson objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. The formation of Freedom Pharmaceuticals is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request to the extent it seeks documents and communications protected by the attorney-client privilege or work product doctrine. Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

**Request for Production No. 25**. All documents regarding communications between you and any

Government Agency regarding the Compound Pain Creams.

***Response***: Jackson objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. Any communication between Jackson and any Government Agency regarding Compound Pain Creams is not relevant to the claims or affirmative defenses asserted in this lawsuit—including any misrepresentations alleged by Plaintiff. Jackson further objects to this Request to the extent it seeks documents and communications protected by the attorney-client privilege or work product doctrine. Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

**Request for Production No. 26**. If and to the extent not produced in response to the foregoing, all documents regarding communications between you and Special Agent Kevin T. Fiore, Federal Bureau of Investigation, regarding the Compound Pain Creams – including without limitation any warrant issued to you or any entity with which you have an affiliation.

***Response***: Jackson objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. Any communications between Jackson and Mr. Fiore is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request to the extent it seeks documents and communications protected by the attorney client privilege or work product doctrine. Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

The Fiore affidavit thoroughly details the alleged role of Jackson and his

entities in a compound pain cream reimbursement scheme. (*See* Doc. 85-1, Ex. A-1, pp. 62–101). Jackson's involvement in the reimbursement scheme is relevant and proportional to the alleged misrepresentations and omissions made about compound pain cream pricing here. Thus, Jackson's objections to Interrogatory No. 16 and Request for Production Nos. 16, 23, 24, 25, and 26, are overruled.

### 5. Communications Between Jackson and Joseph Jackson

> **Request for Production No. 28**. All documents regarding communications between you and Joseph Jackson regarding Clayton Pummill.
>
> ***Response***: Jackson objects to this Request as overly broad, unduly burdensome, seeking irrelevant documents, and not reasonably calculated to lead to the discovery of admissible evidence. The Request as written does not limit its scope to the subject matter at issue in this lawsuit-- including any misrepresentations alleged by Plaintiff (which Jackson denies). Rather, it seeks all documents regarding any communications between Jackson and Joseph Jackson regarding Mr. Pummill, whether those communications have any relation to the claims and affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). As such, Plaintiff's Request is facially overly broad and unduly burdensome and encompasses potential documents that are completely irrelevant to this action. Jackson will, however, produce any nonprivileged, responsive documents relevant to the claims and affirmative defenses asserted in this lawsuit. Jackson states that he has no responsive documents at this time.

This request is overbroad and not proportional to the needs of this case. According to the motion to compel, Beckel offered to narrow this request to: "All documents from January 1, 2014, through the present reflecting or referring to

communications (whether written or oral) between you and Joseph Jackson regarding Clayton Pummill's employment or association with (a) MedHealth Rx or (b) any business in which Fagron or Jackson had an interest." (Doc. 85, p. 14, n. 7). In response to the motion, Jackson asserts he recently received a hard drive that may contain responsive documents. (Doc. 92, p. 10). Jackson must produce documents responsive to Beckel's proposed narrowed Request for Production No. 28.

### 6. Representations Made at Capital Markets Day

**Request for Production No. 29**. All documents regarding the reimbursement training provided to healthcare professionals, as you described at Fagron's Capital Markets Day.

*Response*: Jackson objects to this Request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case. Any reimbursement training that may have been provided to healthcare professionals on how to bill compounding to insurers is not relevant to the claims or affirmative defenses asserted in this lawsuit--including any misrepresentations alleged by Plaintiff (which Jackson denies). Jackson further objects to this Request as calculated primarily for the purposes of harassment. Consistent with these objections, no documents will be produced in response to this Request.

Jackson allegedly referred to the compound pain cream reimbursement scheme during his presentation at Fagron USA's Capital Markets Day, Fagron USA's education and training program. Fagron USA's alleged participation in the reimbursement scheme is relevant and proportional to the claims concerning Fagron USA's billing practices, and to any alleged misrepresentations and omissions about

19

those billing practices. Thus, Jackson's objection to Request for Production No. 29 is overruled.

## III. CONCLUSION

Considering the foregoing analysis, it is **ORDERED**:

1. Jackson's Motion for Protective Order (Doc. 107) is **DENIED**.

2. Beckel's Motion to Compel (Doc. 85) is **GRANTED**. Jackson must provide amended responses to Interrogatory Nos. 11, 12, 13, and 16, and Request for Production Nos. 11, 12, 13, 16, 23, 24, 25, 26, 27, 28,[4] and 29, no later than **February 11, 2019**.

**ORDERED** in Tampa, Florida on February 1, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

---

[4] As narrowed to "[a]ll documents from January 1, 2014, through the present reflecting or referring to communications (whether written or oral) between you and Joseph Jackson regarding Clayton Pummill's employment or association with (a) MedHealth Rx or (b) any business in which Fagron or Jackson had an interest."